UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARNELL MILLER,

        Petitioner,          Case Number: 2:17-cv-12576
                                       Honorable George Caram Steeh
v.

TONY TRIERWEILER,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

Michigan state prisoner Darnell Miller filed a habeas petition under 28 U.S.C. § 2254. Petitioner, who is presently incarcerated at the Bellamy Creek Correctional Facility in Ionia, Michigan, challenges his convictions for two counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520(b); two counts of second-degree criminal sexual conduct, MICH. COMP. LAWS § 750.83, one count of unlawful imprisonment, MICH. COMP. LAWS § 750.349b, one count of felonious assault, MICH. COMP. LAWS § 750.82, and one count of possession of under 25 grams of a controlled substance, MICH. COMP. LAWS § 333.7403(2)(a)(v). Petitioner seeks habeas relief on the ground that the trial court violated his right to present a

-1-

defense by excluding certain testimony.  For the reasons explained below, the Court denies the petition.  The Court also denies a certificate of appealability.

## I.  Background

Petitioner's convictions arise from the sexual assault of his then-26-year-old daughter, DH.  D.H. testified that, on the evening of September 14, 2013, she received a call from her stepmother, Jannie Mae Miller, informing D.H. that Petitioner (Mrs. Miller's husband) had stolen two televisions from the home the couple shared.  D.H. arrived at the Miller home shortly after receiving the call.  The police were at the home, having been summoned by Mrs. Miller.  Port Huron Police Officer Eric Rossow informed Mrs. Miller that he could not take any action because Petitioner and Mrs. Miller were married and shared the home.

D.H. testified that, at Officer Rossow's suggestion, she called Petitioner to see if he would return the televisions.  Petitioner agreed to meet D.H. a short distance away from the home to return the televisions in exchange for $20.  He told D.H. not to bring anyone with her when she met him.  D.H. walked up the street to meet her father.  Family friend Lori Woodyard followed behind.  At the agreed upon meeting place, D.H.

entered Petitioner's car.  Petitioner sped off when he saw Woodyard had followed D.H.

Petitioner drove to a nearby church parking lot.  He said he was not going to go back to D.H.'s stepmother and that D.H. should take the car and televisions back home.  Petitioner exited the car to smoke crack cocaine.  When he was done, D.H. exited the car to hug her father.  When she hugged him, D.H. felt a knife pressed against her back.  Petitioner ordered her not to run and that if she tried to do so he would stab her to death.

Petitioner ordered D.H. to take her clothes off as he pushed her into nearby bushes. He told her he planned to rape her "a little bit."  Tr. at 225-26, ECF No. 9-11, Pg. ID 425-26.  D.H. testified that her father then proceeded to penetrate her vagina and anus with his fingers, and then penetrated her with his penis.  Petitioner became distracted by a noise in the bushes and D.H. ran away as quickly as she could.  D.H., who was naked from the waist down, ran to a nearby home.  There, Julie Ann Launstein-Bevins' assisted her and called 911.  Police took D.H. to a hospital for a rape kit.  Forensic testing found the presence of a single sperm cell taken from a vaginal swab, and saliva from a rectal swab.

Petitioner could not be excluded as the source of the DNA extracted from those swabs.

Police later recovered a knife and D.H.'s pants, underwear, and glasses from the woods near the church parking lot.

Port Huron police detective Karen Brisby testified that, on September 18, 2013, Petitioner's wife appeared at the police station and requested to speak with Detective Brisby. Mrs. Miller told Detective Brisby that Petitioner confessed to her the day after the assault. Mrs. Miller said that Detective confessed that he had touched D.H. because he was tired of her disrespecting him. Initially, he intended to kill her, but God intervened, convincing him to "degrade" D.H. instead. 5/16/14 Tr. at 15 (ECF No. 9-13, Pg. ID 736). Petitioner then told Mrs. Miller, in detail, what he had done to D.H.

At trial, Mrs. Miller denied making most of these statements to Detective Brisby. Mrs. Miller acknowledged that she did tell Detective Brisby that Petitioner had confessed, but denied providing Detective Brisby any other details told to her by Petitioner. Mrs. Miller testified that Petitioner did not confess to her. Instead, she fabricated the story because Petitioner was addicted to crack cocaine and she hoped that if she told

police this story he would be taken off the streets.

Petitioner was convicted by a jury in St. Clair County Circuit Court and sentenced to 30 to 50 years' imprisonment for the criminal sexual conduct and unlawful imprisonment convictions, and 10 to 15 years for the felonious assault and drug possession convictions, all to be served concurrently.

Petitioner filed an appeal of right in the Michigan Court of Appeals challenging the trial court's exclusion of evidence. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Miller*, No. 322711, 2015 WL 6965103 (Mich. Ct. App. Nov. 10, 2015). The Michigan Supreme Court denied Petitioner's subsequent application for leave to appeal. *People v. Miller,* 499 Mich. 929 (2016).

Petitioner then filed the instant habeas petition, raising this claim:

I. Did the trial court violate Petitioner's state and federal right to present a defense and to cross-examine and confront the witnesses against him when it improperly relied upon the Rape Shield Act to exclude relevant, admissible evidence showing that the complainant's testimony lacked credibility. Did this error contribute to Petitioner's conviction, thus entitling Petitioner to a new trial.

    A. Did the trial court reversibly err by excluding relevant, admissible evidence that the complainant had previously threatened to falsely accuse another man of raping her on the basis of the Rape Shield Act.

B. Did the trial court commit an additional error when it excluded relevant admissible evidence that the complainant had made material misrepresentations to law enforcement on the basis of the Rape Shield Act.

## II. Standard

Upon the filing of a habeas corpus petition, the court must promptly examine the petition to determine "if it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief." Rule 4, Rules Governing Section 2254 cases. If the court determines that the petitioner is not entitled to relief, the court shall summarily dismiss the petition. *McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face"). The habeas petition does not present grounds which may establish the violation of a federal constitutional right. The petition will be dismissed.

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III. Discussion

In his sole claim for habeas corpus relief, Petitioner argues that the trial court violated his right to present a defense and to confront witnesses against him by excluding two lines of questioning under Michigan's rape shield statue, Mich. Comp. Laws § 750.520j(1). He sought to question D.H. about her alleged previous threat to falsely accuse someone else of rape and to question her about representations she allegedly made to the police following the assault regarding her pregnancy. The Michigan Court

of Appeals found this evidence properly excluded under the rape shield statute.

The right of a defendant to present a defense and to confront his accusers have long been recognized as fundamental to the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967). They are "minimum essentials of a fair trial." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). While these rights are fundamental to due process, they are "not unlimited, but rather ... subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Indeed, "[a] defendant's interest in presenting ... evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). The exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Id.*, citing *Rock v. Arkansas*, 483 U.S. 44, 58 (1987). In determining whether the exclusion of evidence infringes upon a weighty interest of the accused, the question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984). But, "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the

wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983).

On federal habeas review, a court considering the exclusion of evidence must balance the state's interest in enforcing its evidentiary rules against the relevance and cumulative nature of the excluded evidence, and the degree to which the excluded evidence was "indispensable" to the defense. *Crane*, 476 U.S. at 691. State rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308 (internal citations omitted).

Prior to trial, defense counsel filed a motion to admit evidence of a police report dated February 16, 2014, in which Ronald Williams claimed that D.H. threatened to falsely accuse him of raping her after he accused her of stealing $100 from him. *Miller,* 2015 WL 6965103, at *1. The Michigan Court of Appeals held that, although evidence of prior false allegations are typically admissible, the alleged prior false allegation was not admissible in this instance because it lacked any indicia of trustworthiness. *Id.* The court of appeals explained:

> Defendant's convictions arise out of his actions occurring on September 15, 2013. Prior to trial, defendant filed a motion to

admit as evidence a police report dated February 16, 2014, in which an associate of defendant, Ronald Williams, claimed that the complainant threatened to falsely accuse him of raping her after he accused the complainant of stealing his money. Defendant argued that the evidence was admissible for the purpose of impeaching the complainant's credibility and to show motive and plan. The trial court excluded the evidence on the grounds that the complainant never made a false report of rape to the police and, in addition, "[t]here is certainly not the trustworthiness of the statements that would allow them into evidence under any circumstances."

Generally, the rape-shield statute, M.C.L. 750.520j, does not prohibit the admission of prior false accusations of rape. *Hackett*, 421 Mich. at 348; *People v. Dale Williams*, 191 Mich. App 269, 272; 477 NW2d 877 (1991). However, before such evidence will be admitted, the defendant must make an offer of proof to demonstrate the relevance of the evidence sought to be admitted. *Id.* at 273. That is, concrete evidence must establish that the complainant had actually made a prior false accusation of rape. *Id.* And, here, defendant failed to offer any evidence that the complainant made a prior false accusation of rape. As the trial court held, the complainant never filed a police report accusing Williams of rape. Further, although the complainant's alleged threat against Williams was made via text message, no text message was ever produced.

While a criminal defendant has a fundamental right to present a defense and to confront witnesses against him, the defendant still must comply with procedural and evidentiary rules designed to assure fairness and reliability in the ascertainment of guilt or innocence. *People v. Hayes*, 421 Mich. 271, 279; 364 NW2d 635 (1984). Thus, a defendant's right to present a defense and to confront witnesses against him is limited by the requirements that evidence be relevant and admissible. *Hackett*, 421 Mich. at 354. Because defendant did not make the requisite offer of proof to justify introduction of the challenged evidence, the exclusion of that evidence did not

> deny defendant his right to present a defense or his right to confront the witnesses against him.

*Miller*, 2015 WL 6965103 at *1-*2.

The Supreme Court has found that Michigan's rape-shield statute "represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy." *Michigan v. Lucas*, 500 U.S. 145, 149-50 (1991). State courts "retain wide latitude" to impose reasonable limits on a defendant's cross-examination of an adverse witness "based on concerns about ... harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (internal quotation marks omitted).

Petitioner failed to show that the victim made a prior accusation or that any such accusation was false. The trial court's requirement that Petitioner lay a proper foundation before the evidence was admitted served a legitimate interest and the exclusion of this testimony absent a proper foundation was not "'arbitrary' or 'disproportionate to the purposes [the court rule is] designed to serve.'" *Scheffer*, 523 U.S. at 308. Petitioner has not shown that the Michigan Court of Appeals' decision was contrary to or an unreasonable application of Supreme Court precedent.

Petitioner also argues that the trial court improperly excluded evidence regarding the victim's pregnancy. Petitioner sought to ask the victim when she learned she was pregnant and about statements she made to police implying that the pregnancy resulted form the sexual assault. The Michigan Court of Appeals found no evidentiary error:

> The rape-shield statute, M.C.L. 750.520j, provides as follows:
>
> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
>> (a) Evidence of the victim's past sexual conduct with the actor.
>>
>> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.
>
> Defendant contends that the trial court erred in concluding that the rape-shield statute prohibited him from asking when the complainant learned she was pregnant because such evidence related to the source of the pregnancy, not the complainant's sexual conduct. But evidence regarding the source of a pregnancy is only admissible if it is material to a fact at issue in the case. M.C.L. 750.520j(1). And, here, the source of the complainant's pregnancy was not material to a fact at issue because the prosecution did not argue that the pregnancy resulted from the sexual assault.

-12-

> Defendant further argues that he should have been allowed to
> challenge the complainant's credibility by showing that she
> made misrepresentations to police implying that the source of
> her pregnancy was the sexual assault. But, again, the
> prosecution did not argue that the pregnancy resulted from the
> sexual assault. And evidence that the complainant was
> pregnant at the time of the sexual assault clearly involves
> inquiry into her past sexual conduct which is not permitted
> under M.C.L. 750.520j, i.e., there is no such exception.
> Moreover, any probative value of such evidence was
> outweighed by its inflammatory or prejudicial nature. *See*
> M.C.L. 750.520j(1). Therefore, the trial court did not abuse its
> discretion by prohibiting defendant from asking the complainant
> when she learned she was pregnant, and about statements she
> made to police implying that the pregnancy resulted from the
> sexual assault.

*Miller,* 2015 WL 6965103 at *2.

As noted by the Michigan Court of Appeals, D.H.'s pregnancy was not used at the trial nor was it implied by the prosecutor or any witnesses that the pregnancy resulted from the assault. In fact, prior to trial, it was determined that the date of conception predated the rape. D.H. terminated the pregnancy prior to trial and test results showed that Petitioner was not the father. There was no need for Petitioner to attempt to impeach D.H. regarding any aspect of her pregnancy. The Michigan Court of Appeals' conclusion that the evidence was barred by the rape shield statute was not an unreasonable application of Supreme Court precedent.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## V. Conclusion

For the reasons set forth above, the court finds that Petitioner is not entitled to habeas corpus relief or to a certificate of appealability. Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus and a certificate of appealability are DENIED.

Dated: May 8, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on May 8, 2019, by electronic and/or ordinary mail and also on Darnell Miller #183954, Bellamy Creek Correctional Facility, 1727 West Bluewater Highway, Ionia, MI 48846.

s/Barbara Radke
Deputy Clerk